UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

WALTER HUGO ITURRI
ESTUPINAN,

     Movant,

v.                        CASE NO. 19-20932-CV-SCOLA
                             CASE NO. 17-20706-CR-SCOLA
UNITED STATES OF AMERICA,    MAGISTRATE JUDGE REID

     Respondent.
_____/
LEIDER VIVAS CAJIAO,

     Movant,

v.                        CASE NO. 19-20936-CV-SCOLA
                             CASE NO. 17-20706-CR-SCOLA
UNITED STATES OF AMERICA,    MAGISTRATE JUDGE REID

     Respondent.
_____/

## JOINT REPORT OF MAGISTRATE JUDGE
## RE MOTIONS TO VACATE - 28 U.S.C. § 2255

### I. Introduction

The movants, **Walter Hugo Estupinan ("Estupinan")** and **Leider Vivas Cajiao ("Cajiao"),** have filed separate but nearly identical *pro se* motions to vacate, pursuant to 28 U.S.C. § 2255, attacking the constitutionality of their conviction and sentence for conspiracy to possess with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the United States, entered following

guilty pleas in **Case No. 17-20706-Cr-Scola.** For the reasons explained in detail below, the movants are not entitled to relief.

This cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B), (C); S.D. Fla. Local Rule 1(f) governing Magistrate Judges; S.D. Fla. Admin. Order 2019-02; and Rules 8 and 10 Governing Section 2255 Cases in the United States District Courts.

Because summary dismissal is warranted, the government has not been ordered to file a response. *See* Rule 4(b) of the Rules Governing Section 2255 Cases in the United States District Courts (allowing for summary dismissal of a § 2255 motion if "it plainly appears from the face of the motion and any annexed exhibits, and the prior proceedings in the case that the movant is not entitled to relief."); *see also, e.g., Broadwater v. United States*, 292 F.3d 1302, 1303-04 (11th Cir. 2002)(finding a district court has the power under Rule 4 of the Rules Governing Section 2255 Cases to summarily dismiss a movant's claim for relief so long as there is a sufficient basis in the record for an appellate court to review the district court's decision).

## II. Claims

Construing the § 2255 motions liberally, as afforded *pro se* litigants, pursuant to *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972)(*per curiam*), the movants raise the following identical grounds for relief:

1.      The movants are entitled to a mitigating role adjustment to their respective advisory guideline range, pursuant to U.S.S.G. § 3B1.2, because "the Cartels" threatened, coerced, and manipulated them into committing the offense. *See* 19cv20932 [ECF 6, pp. 5; 3; p. 2]; 19cv20936 [ECF 1, p. 4; 3, p. 2].

2.      The movants claim their pleas were not knowing and voluntary because the stipulated facts do not meet the elements to support a conspiracy as they were threatened or coerced into joining the conspiracy. 19cv20932 [ECF 6, p. 6]; 19cv20936 [ECF 1, p.6].

### III. Procedural Default

### A. Sentencing Errors

In **claim 1,** the movants allege sentencing errors in their § 2255 motions. At the outset, it bears mentioning that a district court lacks the authority to review sentencing errors on a motion to vacate, set aside, or correct a sentence unless the claimed error constitutes a fundamental defect that results in a complete miscarriage of justice. *See Spencer v. United States,* 773 F.3d 1132, 1138 (11th Cir. 2014)(*en banc*). The Eleventh Circuit explained that "any miscalculation of the guideline range cannot be a complete miscarriage of justice because the guidelines are advisory." *Spencer v. United States,* 773 F.3d at 1141.

A fundamental miscarriage of justice occurs when, for example, (1) the court imposes a sentence above the statutory maximum for the offense of conviction; (2) the movant is actually innocent of the offense of conviction; or (3) a prior conviction used to enhance the movant's conviction has since been vacated. *See*

*Spencer v. United States*, 773 F.3d at 1138-1139. The movants have not alleged that their sentences exceeded the statutory maximum for the offense of conviction nor that they are actually innocent of the offense of conviction. The court therefore lacks the authority to grant the relief requested because the claimed error does not constitute a fundamental defect that has resulted in a complete miscarriage of justice.

### B. Voluntariness of Plea

In **claim 2,** the movants suggest that their pleas were not knowing and voluntary. Challenges to the voluntariness of a guilty plea are routinely raised and decided on direct appeal. *See, e.g., United States v. Moriarty,* 429 F.3d 1012, 1018-20 (11th Cir. 2005). Neither movant challenged the voluntariness of their pleas in a timely appeal. Therefore, a defendant who fails to raise an available challenge to the voluntariness of a guilty plea on direct appeal is barred from raising that claim in a collateral proceeding, under the procedural default doctrine. *McKay v. United States,* 657 F.3d 1190, 1196 (11th Cir. 2011). However, the defaulted claim may be raised in a § 2255 proceeding only if the defendant can demonstrate that one of two exceptions applies: (1) cause and actual prejudice, or (2) actual innocence. *Bousley,* 523 U.S. 614, 622 (1998)(citations omitted); *Amodeo v. United States,* 743 F. App'x 381, 384 (11th Cir. 2018).

The movants' challenge to counsel's effectiveness can be construed as cause to excuse the procedural default for failing to raise claim 2 on appeal. *See United*

*States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000)(citations omitted). However, the movant must also demonstrate prejudice, in that the claim would have affected the outcome of the proceedings. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000)(citations omitted).

It is well settled that defense counsel has an affirmative duty, under the Sixth Amendment, to provide competent advice, and to communicate formal offers from the prosecution, and to accept a plea on terms and conditions that may be favorable to an accused. *See Missouri v. Frye,* 566 U.S. 134, 140-141 (2012); *Lafler v. Cooper,* 566 U.S. 156, 162-63 (2012)(citations omitted). The *Strickland* framework applies to advice regarding whether to plead guilty or proceed to trial. *See Lafler v. Cooper,* 566 U.S. at 162-63 (quoting *Hill v. Lockhart,* 474 U.S. 52, 57-59 (1985)).

While the analysis of *Strickland*'s performance prong is the same, in *Lafler,* the Supreme Court explained that, to prove *Strickland* prejudice, a movant is required to demonstrate that the outcome of the plea process would have been different with competent advice. *Lafler v. Cooper,* 566 U.S. at 162-63; *Missouri v. Frye,* 566 U.S. at 146. In *Lafler,* the Supreme Court ruled that a movant "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that

the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 163. *See also, Freeman v. United States,* No. 16-17185-J, 2018 WL 6318358, at *10 (11th Cir. Jul. 31, 2018), *cert. den'd,* 139 S. Ct. 1352 (2019).

As will be discussed in detail below, the movants have not established prejudice for failing to raise claim 2 on direct appeal because the movants have not shown that had counsel challenged the voluntariness of their pleas on appeal, their convictions would have been vacated as not knowing and not voluntary. Thus, the petitioner has not demonstrated that the outcome of an appeal would have been meritorious. Therefore, he cannot establish deficiency or prejudice arising from appellate counsel's failure to pursue a non-meritorious issues on direct appeal. *See United States v. Nyhuis*, 211 F.3d at 1344 (citation omitted).

## IV. Procedural Background

### A. Indictment-Plea

The movants were charged with and pleaded guilty to conspiracy to possess with intent to distribute five kilograms or more of cocaine on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70506(b). [CR ECF 11; 28; 30].

## B. Change of Plea Proceedings

Because the movants challenge the voluntariness of their pleas, a detailed recitation of the guilty pleas and the change of plea proceedings follows. The guilty pleas were entered without the benefit of a written negotiated plea agreement or stipulated factual proffer. [CR ECF 28; 30]. The movants appeared together before the district court for a Fed. R. Crim. P. 11 change of plea proceeding was conducted. [CR ECF 79; *see also* 19cv20932 ECF 3; 19cv20936 ECF 3]. After being given the oath, the movants understood that if they answered any questions falsely, their answers could later be used in a prosecution for perjury. [CR ECF 70, pp. 4-5]. Both movants then provided background information regarding their education and inability to read or write in English [*Id.* p. 6]. The movants also denied being treated for any mental illness or prior addiction to narcotics, prescription drugs, or alcohol. [*Id.*, p. 7]. They further denied having consumed any drugs, alcohol, narcotics, or medications during the past forty-eight (48) hours. [*Id.*].

The movant confirmed reviewing and discussing the charges contained in the Indictment with their respective counsel. [*Id.*, p. 8]. They also affirmed speaking with their attorneys about the government's evidence and any possible defenses they may have had to the charges. [*Id.*]. Next, they confirmed speaking with their attorneys regarding the decision whether to plead guilty or proceed to trial. [*Id.*]. Both indicated they were satisfied with the representation and advice provided by

their counsel. [*Id.*, p. 9]. Each also understood that there was no formal written plea agreement, but the government had agreed to dismiss Count 2 of the Indictment, in exchange for the movants pleading to Count 1. [*Id.*]. The movants denied that any other promises or representations were made in order to induce them to change their pleas. [*Id.*:10]. They also denied being forced, threatened, or coerced into changing their pleas. [*Id.*].

Both movants understood that they were pleading guilty to Count 1 of the Indictment which charged them with a conspiracy, an illegal agreement between each other and other individuals, to possess with intent to distribute five kilograms or more of cocaine while on board a vessel subject to United States jurisdiction. [*Id.*].

The movants further understood that they were facing a minimum ten-year term of imprisonment and up to a statutory maximum of life imprisonment, to be followed by at least five years and up to a term of life supervised release. [*Id.*:11]. They understood that once the advisory guideline range for each was determined, the court could vary from that range, imposing a more or less severe sentence than called for by the guidelines. [*Id.*:12-13]. The movants also understood that any estimates provided by counsel regarding their guideline exposure is not binding on the court and the movants would be unable to withdraw their plea based on the sentence imposed. [*Id.*:13].

The movants also understood that they would be pleading guilty to a felony offense, and that by doing so, they would be deprived of valuable civil liberties, including the right to vote, to hold public office, to serve on a jury, and to possess a firearm. [*Id*. pp. 13-14]. They also understood that if they were not United States citizens, entering a guilty plea could result in their deportation, exclusion, and voluntary departure from the United States, and could prevent them from becoming U.S. citizens. [*Id.*].

Regarding the waiver of their constitutional rights, the movants understood they were giving up the right to a trial by jury, to require the government to prove the charges beyond a reasonable doubt, to have an attorney assist in their defense, to cross-examine prosecution witnesses, present witnesses on their own behalf, and testify or not on their own behalf at trial. [*Id.*, pp. 14-15]. When asked how they wished to plead to Count 1 of the Indictment, each movant responded, "Guilty." [*Id.*:16].

The court then found the movants fully competent and capable of entering into an informed plea, that the movants were aware of the nature of the charge and the consequences of the plea, and that their guilty plea was knowing and voluntary, supported by an independent basis in fact, containing each of the essential elements of the offense. [*Id.*, pp. 16-17]. After accepting their pleas, the court adjudicated them guilty as charged in Count 1 of the Indictment. [*Id.*:17].

## C. Stipulated Facts

At the change of plea proceeding, the movants agreed that on August 16, 2017, they were on board a Panga boat in international waters, approximately four hundred and twenty (420) nautical miles northwest of Darwin Island, off the Galapagos Islands. [CR ECF 79, p. 15]. The vessel was intercepted and boarded by the United States Coast Guard ("USCG"), who seized from the vessel approximately nine hundred and ninety-eight kilograms of cocaine. [*Id*.]. Estupinan identified himself as the master of the vessel, claiming Colombian nationality for himself and the vessel. [*Id.*, pp. 15-16]. The Colombian government was contacted, but they could neither confirm or deny the vessel's nationality. [*Id*.]. As a result, the vessel was treated as one without a nationality and therefore subject to United States jurisdiction. [*Id.*:16].

## D. Presentence-Appeal

Following acceptance of the movants' guilty pleas and the preparation of a Presentence Investigation Report ("PSI"), the movants filed separate sentencing memoranda, and appeared for sentencing on March 9, 2018. [CR ECF 52; 53; 80]. Ultimately, the movants were sentenced to total terms of one-hundred and twenty (120) months imprisonment, to be followed by sixty months of supervised release. [CR ECF 52; 53). Both judgments were entered on **March 12, 2018.** [*Id.*].

Estupinan did not prosecute a direct appeal. Therefore, his judgment became final on **March 26, 2018,** fourteen days after the entry of the judgment, when time expired for filing a notice of appeal. *See* Fed. R. App. P. 4(b)(1)(A)(i); *Adams v. United States,* 173 F.3d 1339, 1342 n.2 (11th Cir. 1999).

Cajiao appealed and the government moved to dismiss the appeal as untimely. [CR ECF 86]. On **January 11, 2019,** the Eleventh Circuit Court of Appeals granted the government's motion and dismissed the appeal as untimely. [*Id.*]. In the context of a § 2255 motion, this court has determined that movants have ninety days to file a petition for writ of certiorari after dismissal of a direct appeal because the dismissal order renders the conviction "final" for purposes of triggering the one-year statute of limitations under the AEDPA. *See Jordan v. United States,* No. 16-60989-CV-Bloom, 2017 WL 6512239 (S.D. Fla. Dec. 1, 2017), *report and recommendation adopted by Jordan v. United States,* 2017 WL 6506565 (S.D. Fla. Dec. 18, 2017), *cert. appealability den'd by*, *Jordan v. United States,* No. 18-10615-K, 2018 WL 2328179 (11th Cir. Apr. 19, 2018)(finding conviction final 90 days after direct appeal dismissed)(citing *United States v. Richardson,* 215 F.3d 1338 (10th Cir. 200) (unpub.)(finding in a § 2255 proceeding, movant's conviction became final when 90-day period for filing certiorari petition expired from dismissal of direct appeal)(citing S. Ct. R. 13.1). Pursuant to Supreme Court Rule 13.1. "[t]he time to file a petition for a writ of certiorari runs from the date of entry of the judgment or

*order sought to be reviewed,* and not from the issuance of the mandate." (emphasis added).

Where, as here, Cajiao could have, but did not seek further review of the appellate court's order of dismissal, the judgment became final on **April 11, 2019,** when the 90-day period for seeking certiorari review in the United States Supreme Court expired following dismissal of his direct appeal. *See Jordan v. United States, supra; United States v. Gentry,* 432 F.3d 600, 604 n.2 (5th Cir. 2005) (noting that federal prisoner's conviction became final ninety days after court of appeals dismissed direct appeal for want of prosecution); *United States v. Sosa,* 364 F.3d 507, 509 (4th Cir. 2004) (federal prisoner's conviction became "final," triggering one-year limitations period applicable to §2255 motion to vacate, ninety days after court of appeals dismissed defendant's direct appeal).

### E. Motions to Vacate

**Estupinan** returned to this court on **March 7, 2019,** filing a timely § 2255 motion with supporting memorandum and affidavit. [CV ECF 1, p. 10; CV DE 4]. He filed an amended motion, identical to the original, but executed under penalty of perjury on the same date. [CV ECF 6]. Consequently, for purposes of this proceeding, the movant's motion, as amended, is deemed filed on **March 7, 2019**. [CV ECF 4]. **Cajiao** also timely filed his § 2255 motion on **March 5, 2019,** when he signed and dated it under penalty of perjury. [CV ECF 1, p. 8, CV ECF 3, p. 8].

## V. Standard of Review

Because the movants challenge the constitutionality of their conviction and resultant sentence, and suggest that counsel was ineffective for failing to pursue the claims at sentencing or on direct appeal, the standard governing guilty pleas and ineffective assistance follows.

### A. Guilty Plea Principles

Because a guilty plea waives certain constitutional rights, before it is accepted, a district court must ensure that the waiver is a voluntary, knowing, and intelligent act, done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *Hill v. Lockhart,* 474 U.S. 52, 56 (1985); *United States v. Ruiz,* 536 U.S. 622, 629 (2002). To be knowing and voluntary: (1) a plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. *United States v. Moriarty,* 429 F.3d 1012, 1019 (11th Cir. 2005). Thus, a voluntary and intelligent plea of guilty, made by an accused person, must stand unless induced by misrepresentations made to the accused person by the court, prosecutor, or his own counsel. *Brady v. United States,* 397 U.S. 742, 748 (1970).

### B. Ineffective Assistance of Counsel Principles

The law is well settled that a criminal defendant is entitled to the effective assistance of competent counsel. *Lee v. United States,* 137 S.Ct. 1958, 1964 (2017).

Where a movant challenges counsel's effectiveness, he must demonstrate that: (1) counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *See Strickland v. Washington,* 466 U.S. 668, 687, 694 (1984). However, if the movant cannot meet one of *Strickland's* prongs, the court does not need to address the other prong. *Strickland,* 466 U.S. at 697, *Brown v. United States,* 720 F.3d 1316 (11th Cir. 2013).

To show deficient performance, a movant must demonstrate that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States,* 518 F.3d 1291, 1301 (11th Cir. 2008)(citations omitted); With regard to the prejudice requirement, the movant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland,* 466 U.S. at 694. In the sentencing context, this requires a showing that the sentence would have been less severe. *Glover v. United States,* 531 U.S. 198, 203-04 (2001). A movant is also not prejudiced by counsel's failure to raise non-meritorious claims. *Hittson v. GDCP Warder*, 759 F.3d 1210, 1262 (11th Cir. 2014). Courts may not vacate a conviction or sentence solely because the outcome would have been different, but for counsel's error, as it may grant the defendant a windfall to which the law does not entitle him. *Lockhart v. Fretwell,* 506 U.S. 364, 369-70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail ... are few and far between." *Chandler v. United States,* 218 F.3d 1305, 1313 (11th Cir. 2000)(en banc). The *Strickland* test does not require a showing of what the best or good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). In retrospect, where counsel's decision appears to have been unwise, it will have been ineffective only if it was "so patently unreasonable that no competent attorney would have chosen it." *Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d at 1099 (citations omitted).

## VI. Discussion

As discussed below, because the claims raised by the movants are non-meritorious, they cannot demonstrate cause or prejudice arising from counsel's failure to pursue the issues on direct appeal. Therefore, habeas corpus relief is not warranted in their cases.

### A. Mitigating Role Reduction

In **claim 1,** both movants suggest that they are entitled to a mitigation role adjustment to their advisory guideline range, pursuant to § 3B1.2 of the U.S. Sentencing Guidelines. [19cv20932 CV ECF 1, p. 4; CV ECF 3, p. 2; 19cv20936 CV ECF 1, p. 4; CV ECF 3, p. 2]. Both movants maintain they are one of many

victims of Colombian cartels who "pray on the poor," using threats, coercion, and intimidation to force victims to do their bidding. [*Id.*]. They argue their role in the conspiracy was significantly less than others, thereby warranting a downward departure. [*Id.*]. As will be demonstrated below, the movants are not entitled to relief on this claim because the issue was raised and rejected at sentencing. The movants have not demonstrated trial court error, much less that counsel were ineffective for failing to further pursue the issue on direct appeal.

Prior to sentencing, both movants filed objections to the Presentence Investigation Report ("PSI") arguing that they were entitled to a mitigating role adjustment to their base offense level. [CR ECF 42; 46; 47; 80, pp. 5, 8]. The probation officer filed Addendums to the PSI's explaining that neither defendant was entitled to a mitigating role adjustment. Regarding Estupinan's role, the probation officer explained that he was not deserving of the adjustment because he was the master of the vessel and was not less culpable than the other defendants. (PSI Addendums). Regarding Cajiao's role, the probation officer commented that "Cajiao's culpability does not appear to differ significantly from that of his co-defendants and no information has been provided with regards to any unindicted co-conspirators." [*Id.*]. As to both movants, the probation officer further noted that there was no evidence "that established a criminal hierarchy within this jointly undertaken

criminal conspiracy." [PSI Addendums]. Therefore, it remained the probation officer's position that no mitigating role adjustment was warranted. [*Id*.].

At sentencing, Estupinan renewed his objection, arguing he was entitled to a minor role reduction because his role was minor when compared with the extent and vastness of the drug importation operation. [*Id.*, p. 5]. Estupinan maintains there were others who planned the operation and he was only recruited for the limited purpose of transporting the drugs into the United States. [*Id.*:, pp. 5-6]. The method and manner of transportation was predetermined by other key players in the organization. [*Id.*, p. 6]. He denied procuring the drugs and denied recruiting others to join in the venture. [*Id.*].

Cajiao's counsel adopted the arguments made by Estupinan's counsel. [*Id*.:8]. However, she also emphasized that Estupinan's role as master of the vessel was more significant than Cajiao, who was simply hired to work aboard the vessel. [*Id.*]. Cajiao's counsel also emphasized the fact that it did not seem fair that the safety valve would apply to Title 18 cases, but not to Title 46 cases. (*Id.*:10-12).

In turn, the government argued that there was a significant amount of cocaine involved, and that this case involved a "chain conspiracy," where everyone, from the grower to the deliverer of the drugs on the street should be held equally accountable. (*Id.*:12).

The court denied the mitigating role adjustment, finding someone like Estupinan, who is the master of the vessel, does not qualify as a minor participant. [*Id.,* p. 13]. Regarding Cajiao's involvement, the court found Cajiao's role less significant than Estupinan's, but more significant than the other two crew members who were hired as helpers. [*Id.*]. In so ruling, the Court commented that Cajiao's role required him to ensure that none of the drugs were thrown overboard by others aboard the vessel. [*Id.*]. As a result, he overruled Cajiao's objection to the probation officer's failure to recommend a mitigating role adjustment. [*Id.*].

1. <u>Applicable Law re Mitigating Role Adjustment</u>

Section 3B1.2 of the United States Sentencing Guidelines provides a decrease to a defendant's base offense level by: (1) four levels "[i]f the defendant was a minimal participant in any criminal activity;" (2) two levels "[i]f the defendant was a minor participant in any criminal activity;" and, (3) three levels where the participation falls in between (1) and (2) above. *See* U.S. Sentencing Guidelines Manual § 1B1.2(b) (U.S. Sentencing Comm'n 2016).

A mitigating role adjustment is available to any defendant "who plays a part in committing the offense that makes him substantially less culpable than the average participant. . ." *See Id.* § 3B1.2 cmt. n.3(A) (U.S. Sentencing Comm'n 2016). Whether to apply the mitigating role adjustment depends on the "totality of the circumstances," which include consideration of the following factors: "(i) the degree

to which the defendant understood the scope of the criminal activity; (ii) the degree to which the defendant participated in the planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; [and] (v) the degree to which the defendant stood to benefit from the criminal activity." *See Id.* § 3B1.2 cmt. n.3(C) (U.S. Sentencing Comm'n 2016).

To warrant a "minor role" adjustment," a defendant must demonstrate that he is one "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *Id.* § 3B1.2, cmt. n.5 (U.S. Sentencing Comm'n 2016); *see also*, *United States v. Pico-Mocera*, 740 F. App'x 969, 971 (11th Cir. July 2, 2018)(unpublished). However, a court must consider the totality of the circumstances. *See United States v. Pico-Mocera*, 740 F. App'x at 971 (citing U. S. Sentencing Guidelines Manual § 3B1.2, cmt. n.3(C)). "Two principles guide the determination of whether a defendant played a minor role in the criminal scheme: (1) the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and (2) [his] role as compared to that of other participants in [his] relevant conduct." *United States v. Presendieu*, 880 F.3d 1228, 1249 (11th

Cir. 2018)(quoting *United States v. De Varon*, 175 F.3d 930, 9340 (11th Cir. 1999)(*en banc*)).

2. <u>Discussion re Mitigating Role</u>

      As applied here, the court heard argument from the movants regarding their objections to the probation officer's determination that neither was entitled to a mitigating role adjustment. The court, in its discretion, overruled the objections, adopting the contents of the PSIs without change. (Statement of Reasons). The court's denial of the mitigating role adjustment is supported by the record which confirms that the movants knowingly participated in the transportation of an extremely large quantity of cocaine, assisted in its importation as master of the vessel or crew member supervising the drugs, and were both equally culpable in the offense. Moreover, no evidence was provided that these two named defendants were any less culpable than the other two indicted coconspirators, nor that there was a "criminal hierarchy" to the roles each defendant played in the importation scheme. For all of these reasons, the court's finding that the movants were not entitled to a mitigating role reduction was not error. *See United States v. Pico-Mocera,* 740 F. App'x at 972 (finding nothing in the record supporting conclusion the minor role reduction was based solely on one factor, notwithstanding that the district court did not explain its decision in any great detail).

Because the movants have not established deficiency or prejudice under *Strickland,* the movants attempt in this proceeding to fault counsel for failing to pursue the issue further at sentencing or on appeal warrants no relief. Thus, the claim is procedurally defaulted because it is a non-meritorious claim that need not have been raised on direct appeal.

## B. Proof of a Conspiracy

In **claim 2,** the movants claim their plea was not knowing or voluntary because the stipulated facts do not meet the elements to support a conspiracy as they were coerced into joining the conspiracy. [19cv20932 CV ECF 6, p. 6; 19cv20936 CV ECF 1, pp. 5-6]. As discussed below, this claim is devoid of merit. Therefore, the movants cannot demonstrate that counsel were ineffective for failing to pursue this non-meritorious issue on direct appeal.

1. Applicable Law re Charged Offense

To prove the existence of a conspiracy, the government must prove that "an agreement existed between two or more persons and that the defendant knowingly and voluntarily participated in it." *See United States v. Merritt,* 782 F. App'x 780, 781-82 (11th Cir. 2018)(unpublished)(citing *United States v. Tinoco*, 304 F.3d 1088, 1122 (11th Cir. 2002)). The defendant "must be aware of the essential elements of the conspiracy, which for conspiracy to possess with intent to distribute means the defendant needs to be aware that he is in possession of the drugs specifically." *United*

*States v. Merritt,* 729 F. App'x at 782 (citing *United States v. Ohayon,* 483 F.3d 1281, 1291 (11th Cir. 2007); *United States v. Louis,* 861 F.3d 1330, 1332-35 (11th Cir. 2017)). Moreover, "[a] conspiracy may be inferred when crewmen are on a vessel in which the presence of contraband is obvious, which is met by large quantities of contraband on a small vessel." *United States v. Merritt,* 729 F. App'x at 782 (citing *United States v. Fuentes*, 877 F.2d 895, 900 (11th Cir. 1989)).

The following factors may be considered when determining whether a defendant could have been found guilty of a conspiracy, as charged here:

> (1) probable length of the voyage; (2) the size of the contraband shipment, (3) the necessarily close relationship between the captain and crew; (4) the obviousness of the contraband, and (5) other factors, such as suspicious behavior or diversionary matters before apprehension, attempts to flee, inculpatory statements made after apprehension, witnessed participation of the crew, and the absence of supplies or equipment necessary to the vessel's intended use.

*United States v. Merritt,* 729 F. App'x at 782 (citing *United States v. Tinoco,* 304 F.3d at 1123). However, where the government demonstrates that there was a large quantity of contraband, it need only prove any one of the other factors listed above. *Id.*

2. <u>Discussion re Conspiracy</u>

As applied here, at the change of plea proceeding the movants agreed that they had conspired with known and unknown individuals to bring a large quantity of cocaine into the United States. The quantity of drugs found aboard the vessel was substantial. There was also no hierarchical distinction between any of the coconspirators. They admitted to having conspired with each other and with others unknown to the court, to import a large quantity of cocaine into the United States. Any allegation to the contrary here or in objections should be summarily rejected as disingenuous and perjurious given the admissions made by the movants, under oath, during the change of plea proceedings. The movants' pleas were knowing and voluntarily entered. Further, the movants have not demonstrated that they did not knowingly and voluntarily join the charged conspiracy. Therefore, they have failed to establish either deficient performance or prejudice under *Strickland* arising from counsel's failure to pursue the issue on appeal. Consequently, the claim is procedurally defaulted from review here.

**VII. Cautionary Instruction Re Clisby Rule**

The Court is mindful of the *Clisby*[1] rule that requires district courts to address and resolve all claims raised in habeas corpus proceedings, regardless of whether

---

[1]*Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992).

relief is granted or denied. *Clisby v. Jones*, 960 F.2d at 936-37; *Rhode v. United States,* 583 F.3d 1289, 1291 (11th Cir. 2009)(holding that *Clisby* applies to § 2255 proceedings). However, nothing in *Clisby* requires, much less suggests, consideration of claims or arguments raised for the first time in objections. Therefore, if the movants attempt to raise arguments or further factual support for their claims in objections, the court should exercise its broad discretion and refuse to consider the arguments not raised before the magistrate judge in the first instance. *See Williams v. McNeil,* 557 F.3d 1287, 1291 (11th Cir. 2009)(*citing Stephens v. Tolbert,* 471 F.3d 1173, 1174 (11th Cir. 2006)(finding no abuse of discretion by the district court in declining to consider timeliness argument that was not presented to the magistrate judge)). This is so because "[P]arties must take before the magistrate, 'not only their best shot but all of the shots.'" *See Borden v. Sec'y of Health & Human Services*, 836 F.2d 4, 6 (1st Cir. 1987) (*quoting Singh v. Superintending School Committee of City of Portland*, 593 F. Supp. 1315, 1318 (D. Me. Sept. 27, 1984)).

## VIII. Evidentiary Hearing

The movants are also not entitled to an evidentiary hearing on the claims raised in this proceeding, having failed to demonstrate that the allegations, if proved, would establish their right to collateral relief. *See Schriro v. Landrigan,* 550 U.S. 465, 473-75 (2007); *Holmes v. United States,* 876 F.2d 1545, 1553 (11th Cir. 1989).

## IX. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his § 2255 motion has no absolute entitlement to appeal, and to do so, must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell,* 556 U.S. 180, 183 (2009) (citing *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000); *Wilkinson v. Dotson,* 544 U.S. 74, 78-83 (2005)). This Court should issue a certificate of appealability only if the movant makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where a district court has rejected a movant's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Upon consideration of the record as a whole, this Court should deny a certificate of appealability. Notwithstanding, if the movants do not agree, they may bring this argument to the attention of the district judge in objections.

## X. Recommendations

Based on the foregoing, it is recommended that:

1.      The motions to vacate be DENIED on the merits;

2.      Final judgment be entered in favor of the respondent;

3.      That no certificate of appealability issue; and,

4.      The cases CLOSED.

Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 149 (1985); *Williams v. McNeil,* 557 F.3d 1287, 1291 (11th Cir. 2009)(finding district court has discretion to decline consideration of arguments not presented to the magistrate judge in the first instance).

Signed this 1st day of July, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

cc:     Leider Vivas Cajiao, *Pro Se*
        Reg. No. 14979-104
        Rivers Correctional Institution
        Inmate Mail/Parcels
        Post Office Box 630
        Winton, NC 279786

        Water Hugo Iturri Estupinan, *Pro Se*
        Reg. No. 14978-104
        Rivers Correctional Institution
        Inmate Mail/Parcels
        Post Office Box 630
        Winton, NC 279786

        Yvonne Rodriguez-Schack, AUSA
        United States Attorney's Office
        99 NE 4 Street
        Miami, FL 33132
        Email: Yvonne.Rodriguez-Schack@usdoj.gov